UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

|  |  |  |
|---|---|---|
| DORSEY HAYDEN SMITH | ) | |
| PLAINTIFF | ) | |
| v | ) | |
| | ) | |
| PATRICK BRITTON HARR, | ) | Case No. 2:21-cv-03989-RMG |
| G. ELLSWORTH HARRIS V, | ) | Jury Trial Demanded |
| COASTAL LABORATORIES INC, | ) | |
| AMS ONSITE INC, | ) | |
| Both Individually and as Liquidating Shareholders | ) | |
| Of any lapsed above named entities | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**AMENDED SUMMONS**

**TO:    THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Amended Complaint in

this action, a copy of which is herewith served upon you, and to serve a copy of your answer to

said Complaint on the subscribed at the law office at 147 Wappoo Creek Drive, Suite 202,

Charleston, South Carolina   29412, within thirty (30) days after the service hereof, exclusive of

the day of such service; and, if you fail to answer the Amended Complaint within the time

aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the

AmendedComplaint, including the rendering of judgment by default against you.

If the within pleadings were served upon you by certified mail, then in that event, a copy

of your Answer to said Complaint shall be received by said attorney within thirty-five (35) days

after the service thereof, exclusive of the day of such service, as provided by Rule 6, of the South

Carolina Rules of Civil Procedure.

1

**YOU ARE HEREBY GIVEN FURTHER NOTICE** that if you fail to answer, appear or defend said Amended Complaint required by this Summons within said time allowed under Rule 6, of the South Carolina Rules of Civil Procedure, judgment by default will be rendered against you for the relief demanded in said Complaint.

Respectfully submitted by,
QUERY SAUTTER & ASSOCIATES, LLC
/S/ Michael H. Ellis
O. Grady Query, Esquire
gquery@qlawsc.com
Michael Ellis, Esquire
mellis@qlawsc.com
147 Wappoo Creek Dr., Suite 202
Charleston, SC 29412
T: 843.795.9500
F: 843.762.1500

Attorneys for Plaintiff

Dated: 01/07/2022

Charleston, South Carolina

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

DORSEY HAYDEN SMITH                              )
     PLAINTIFF                                )
v                                               )
                                                )
PATRICK BRITTON HARR,                           )      Case No. 2:21-cv-03989-RMG
G. ELLSWORTH HARRIS V,                          )      Jury Trial Demanded
COASTAL LABORATORIES INC,                       )
AMS ONSITE INC,                                 )
Both Individually and as Liquidating Shareholders  )
    Of any lapsed above named entities          )
     DEFENDANTS.                              )
                                                )

## AMENDED COMPLAINT

Comes now Plaintiff DORSEY HAYDEN SMITH complaining of Defendants above named, and pursuant to the Court's Order of Dec 28, 2021 (Doc 16) shows unto the Court as follows:

### PARTIES

1. Plaintiff DORSEY HAYDEN SMITH ("Plaintiff") is a citizen and resident of Charleston County, South Carolina, formerly employed in South Carolina by above named Defendants.

2. Defendants PATRICK BRITTON HARR, ELSWORTH HARRIS, COASTAL LABORATORIES INC, and AMS ONSITE INC, (hereafter, the "PBH Defendants") individually, and/or in concert[1], and/or as a single business enterprise, employed Plaintiff in South Carolina in their business venture to sell contracts for medical testing services to

---

[1] At the pleading stage, FRCP 8(d) provides for alternative and inconsistent statements of claims, thus permitting an allegation that the PBH Defendants "individually and/or in concert" employed Plaintiff."

3

facilities having need for medical testing including Covid 19 testing, such as PruittHealth Inc, and Majestic Care Home Health LLC.

3. For purposes of this action, Defendants COASTAL LABORATORIES INC and AMS ONSITE INC, operated as a single business enterprise and are amalgamated for liability purposes.[2]

## JURISDICTION

4. Jurisdiction over Defendants is proper insofar as the actions complained of occurred, in whole or in part, in South Carolina while Defendants, and each of them, were present in South Carolina and/or conducting business in South Carolina in person, by or through their agent(s) and the agent(s) of their company, by telephone, by mail, and/or by internet.

5. The Court has diversity jurisdiction of this action insofar as the amount in controversy exceeds $75,000 and there is complete diversity between the Plaintiff (a resident of South Carolina) and Defendants (two Delaware corporations with principal places of business in Annapolis Maryland, and two individuals who are Maryland residents).[3]

## FACTS

6.  On or about February, 2020, the PBH Defendants employed Plaintiff in South Carolina to sell contracts for their business venture of providing medical testing services to facilities having

---

[2] Defendants acknowledge that "the single business enterprise (also known as amalgamation)" doctrine is a theory of liability recognized by South Carolina courts. (Doc 6-1 p3). According to the South Carolina Supreme Court: "[the] threshold amalgamation issue…is an assessment of whether these entities actually operate as a single business enterprise, and thus should be treated as a single entity. *** [T]he corporate entities were properly regarded as a single entity because the evidence at trial showed "an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between the corporations and their activities." *Pertuis v Front Roe Restaurants Inc,* 817 SE2d 273, 423 SC 640 at 650-651 (2018).

[3] Also, of note is Defendants' admission that "The Court has diversity jurisdiction absent the Silliman Defendants." (Doc 1 p5).

4

need for medical testing including Covid 19 testing, such as PruittHealth Inc, and Majestic Care Home Health LLC.

7. For purposes of this action, Defendants PATRICK BRITTON HARR, ELSWORTH HARRIS, COASTAL LABORATORIES INC, and AMS ONSITE INC, are each individually and collectively "employer(s)" of Plaintiff as that term is defined in SC Code § 41-10-10(1) and addressed as "Liability Under the Payment of Wages Act" in *Dumas v Infosafe Corporation* 463 SE2d 641, 320 SC 188 at 195 (1995) explaining the above statutory language as follows:

> Applying this rule of construction, we hold **the legislature intended to impose individual liability on agents or officers of a corporation** who knowingly permit their corporation to violate the Act. To hold otherwise would require us to ignore the words "and any agent or officer of the above classes." These words have appeared in the definition of "employer" in every version of the Act since its first enactment in 1938. See S.C.Code Ann. § 41-11-110(1) (1986); S.C.Code Ann. § 40-111(1) (1962); S.C.Code Ann. § 40-111(1) (1952); S.C.Code Ann. § 7034-6(1)(a) (1942); Act No. 944, § 1(a), 1938 S.C.Acts 1886.

8. As to Defendants COASTAL LABORATORIES INC and AMS ONSITE INC acting as a single business enterprise amalgamated for liability purposes, Ex's A, B, and C are copies of Court documents filed by PBH Defendants Coastal Laboratories and AMS Onsite as well as by the Court in a federal action filed in the US District Court for Maryland by those two PBH Defendants concerning their business venture in which Plaintiff was employed.

9. Ex A is the Amended Complaint filed in the Maryland action by the same attorney Leitess of the Silverman law firm representing the PBH Defendants before this Court (Doc 1-1 pp48 ff), which Amended Complaint in that case at ¶¶ 7, 8, 21, 26, 30, 33, 42, 52-55, 72, 80-82, 85, 89, 109, 116 contains numerous allegations *by PBH Defendants* Coastal Laboratories and AMS Onsite *themselves* (i.e. *admissions*), which underscore the single business enterprise nature of their business venture in which Plaintiff was employed to obtain Nursing Home contracts.[4]

---

[4] To paraphrase from that Amended Complaint:

10. Ex B is the Maryland District Court's Order (Memorandum Opinion) of Nov 23, 2020, denying

a Motion to Dismiss in that case (Doc 1-1 pp.80ff) which begins by stating that:

> Plaintiffs Coastal Laboratories Inc. and AMS Onsite, Inc (collectively, "Plaintiffs")
> bring this tort action against individual Defendants…James F. Silliman MD, James
> Bauder "Bo" Silliman, …Z DiagnostiX LLC…*with respect to Plaintiffs' efforts to
> acquire medical testing laboratories to assist their infection control management
> program designed specifically for nursing homes.* (p1of 32)

11. The Maryland Court continues throughout its Order making repeated references to Coastal

Laboratories and AMS Onsite (together) as "Plaintiffs," indicating their business, their Nursing

Home customers, and their claims against the Defendants in that case (including the prior

Silliman Defendants) were the result of those Defendants' intent to harm the business venture

of Coastal Laboratories and AMS Onsite, stating specifically (emphasis supplied):

> Plaintiffs Coastal Laboratories Inc…and AMS Onsite Inc…are Delaware
> corporations with their principal places of business in Annapolis, Maryland.
> Coastal Labs uses a proprietary molecular technology platform that allows it to

- Britton Harr *formed Coastal to…provide laboratory services in support of AMS*['s] infection control and prevention program ¶ 26
- *Coastal and AMS* immediately recognized that the COVID-10 pandemic could ravage nursing homes and thus began efforts to expand services to meet anticipated nationwide need to control the spread of the infection ¶ 30
- The discussions included an in-person meeting in Charleston South Carolina, on March 6, 2020 at which *Coastal principals Britton Harr and G. Ellsworth Harris V* [reiterated their expectations for the business venture to the prior Silliman Defendants] ¶ 33
- Both Coastal and AMS…relocated their primary offices to and were conducting *their business operations* out of *their current address at 2 Compromise Street*, Annapolis Maryland. ¶ 42
- Coastal and AMS operating in support of their business venture ¶ ¶ 52-55
- Without warning to Coastal or AMS…Jolley and Silliman suddenly halted shipments of test kits to *Plaintiffs' customer Nursing Homes*. ¶ 72 see also ¶¶ 80-82, 85, 89
- The Maryland Defendants actions calculated to cause damage and loss to *Plaintiffs in their lawful business***….**¶ 109
- The Maryland Defendants actions "made it impossible for *Plaintiffs' Nursing Home Customers* to obtain COVID-19 test results called for in *their contracts with Plaintiffs***.** ¶ 116

generate timely and accurate analyses of dozens of respiratory pathogens, including COVID-19. AMS provides clinical environmental infection prevention and control services to residential nursing and rehabilitation facilities in several states including Maryland. (p2 of 32)

In 2017, *Plaintiff AMS sought to partner* with a lab to test and analyze samples AMS collected though its infection control management program designed for nursing homes… *** *Britton Harr decided to purchase the Arizona labs to provide lab services in support of AMS'*…infection control and prevention program. *Britton Harr formed Coastal Labs to do so*. (pp4-5 of 32).

On or about March 6, 2020, *Coastal principals Britton Harr and G. Ellsworth Harris* had an in-person meeting in Charleston South Carolina with…James Silliman, Bo Silliman and…ZDX. (p6 of 32).

By this time, *Coastal and AMS had both relocated* their primary offices to Maryland and were conducting *their* business operations out of *their* current address in Annapolis Maryland. In the following weeks, *Coastal and AMS entered into dozens of contracts with nursing homes to perform testing*, including 30 nursing homes in Maryland. (p7 of 32).

On or about July 17, 2020, Defendants blocked Plaintiffs from access to the web portal where COVID-19 test results were reported. *** As a result, *Plaintiffs received numerous complaints* from *their* nursing home customers. (p10 of 32).

Defendants allegedly communicated with *Plaintiffs' Maryland customers*…. As a result, Plaintiffs allege that they lost an opportunity to expand *their business* with existing nursing home customers in Maryland. (p18 of 32).

The thrust of Plaintiff's case is that Defendants fraudulently induced *Plaintiffs into buying two Arizona labs* by assuring Plaintiffs that they would gain regulatory approval for COVID-19 testing, persuading *Plaintiffs to lend their valuable lab equipment* to Defendants, all while Defendants formed their own entities to allegedly compete with and diminish *Plaintiffs' role and allegedly usurp their lab equipment*. P23 of 32).

*Plaintiffs* plainly allege that Defendants' tortious actions were aimed at *Plaintiffs' customers* in Maryland by…halting shipment of test kits to customer nursing homes, blocking web portal access to nursing home customers in Maryland, and using the portal's "help desk" to solicit *Plaintiffs' Maryland based customers*. (p25 of 32).

12. Ex C is the Maryland District Court Order of July 15, 2021, and Memorandum Opinion (which concerns a $3-Million bond ordered to be posted by Coastal Laboratories and Patrick Britton Harr) containing language of the Court in that Order as well showing that Coastal Laboratories

Inc. and AMS Onsite Inc. were engaged in a single business enterprise, and, moreover, that those companies together with Britton Harr had engaged in inappropriate transfers of funds between themselves, stating (emphasis supplied):

> These consolidated cases involve competing claims of *Patrick Britton Harr…*and Dr. Tatum Jolly…and the *corporate entities* respectively *owned and controlled by them*. (p1 of 16).

> Dr. Jolly alleges that since March 18, 2020, *$430,000 has been transferred by Coastal Labs to BHE [Britton Harr enterprises]*, $197,000 from Provista to BHE; *$2,464,003 from Coastal Labs to AMS Onsite*, *$2,186,000 from Coastal Labs to Coastal Management*, and $198,000 from Provista to Coastal Management. Dr. Jolley contends that none of these transfers were made in the ordinary course of business of for any legitimate business expenses, while Mr. Britton Harr asserts that the transfers were repayments for *undocumented loans and marketing services* rendered between his companies. Dr. Jolly notes that *Mr. Britton Harr and his companies have been unable to produce any documents, such as invoices, work orders, or purchase orders that reflect what marketing services were rendered, identify individuals who performed any marketing services, or correlate the total amounts transferred* to contracts which establish a monthly services rate of $4,500 per long term care facility serviced. (pp6-7 of 16).

> It is undisputed that Coastal Management is a corporation wholly owned by Mr. Britton Harr. Although the parties previously represented that AMS Onsite was also wholly owned by Mr. Britton Harr, Dr. Jolly now alleges that *Mr. Britton Harr was a 50% owner of AMS Onsite, and Mr. Britton Harr does not dispute such allegation.* (p6 of 16, fn2).

> Dr. Jolly alleges that Mr. Britton Harr knew that the certifications were false at the time he made them, pointing to the alleged sham transfers made by Britton Harr out of the Coastal Labs … accounts to the accounts of his other wholly and partially owned companies. *** Dr. Jolly generally contends that Mr. Britton Harr made the sham transfers with the intent to render BHE insolvent…. *Although Mr. Britton Harr alleges that the transfers were made in the ordinary course of business as repayments on undocumented loans and other payments for marketing services contracts between his companies,* Dr. Jolly notes that *Mr. Britton Harr has been unable to provide any specific details related to the marketing services provide by the companies nor correlate the amounts transferred to the purported contract terms.* (pp13-14 of 16).

> Mr. Britton Harr's allegations that the movement of the funds was for the repayment of undocumented loans or payment on marketing services contracts *lack factual support at this time.* Reading the facts and law generously, this Court is satisfied that Dr. Jolly has stated a plausible claim that Mr. Britton Harr never intended to perform as he certified. (p16 of 16).

8

13. Pursuant to his employment with them, the PBH Defendants paid Plaintiff compensation in the form of a commission for his services during 2020 in selling and closing contracts to facilities having need for medical testing including Covid 19 testing, such as PruittHealth Inc, and Majestic Care Home Health LLC and promised to provide Plaintiff with a 1099 form for such compensation. (Ex's D, E – text messages Feb 1 and 5, 2020).

14. The PBH Defendants promised to pay Plaintiff as a commission on sales the sum of $1,000 per contract per month for the life of the contract with each facility for any and all contracts sold by Plaintiff for the PBH Defendants to provide medical testing services to such facilities having need for medical testing including Covid 19 testing.

15. In order to earn his commissions, nothing was required of Plaintiff other than he sell and close the contracts, while the continuing fulfillment of the obligations of those contracts was entirely and completely the responsibility of the PBH Defendants.

16. In conjunction with his hiring by the PBH Defendants on a 100% commission basis, the PBH Defendants agreed to "front" Plaintiff the first 5 contracts for January through March 2020, in the amount of $5,000. (Ex's D, E).

17. On or about March, 2020, Plaintiff sold contracts for at least 97 PruitHealth facilities to purchase and utilize the service of the PBH Defendants. (Ex F – Pruitt Health Laboratory Services Agreement).

18. Upon information and belief, the PruittHealth contracts ran through September, 2020.

19. The commissions earned by Plaintiff and due from the PBH Defendants to Plaintiff on the PruittHealth facilities contracts totaled $679,000 ($97,000 per month for 7 months).

20. On or about August 2020, Plaintiff sold contracts for 39 Majestic Care Home Health LLC facilities to purchase and utilize the services of the PBH Defendants.

21. Upon information and belief, the Majestic Care Home Health LLC contracts ran through December, 2020.

22. The commissions earned and due from the PBH Defendants to Plaintiff on the Majestic Care Home Health LLC facilities contracts totaled $195,000 ($39,000 per month for 5 months).

23. At some point prior thereto, Defendant Patrick Britton Harr (PBH) had provided Plaintiff with an undated option contract to acquire an equity ownership interest in another PBH business entity by which Plaintiff had been previously employed in exchange for payment from Plaintiff of $100,000.

24. Thereafter, the PBH Defendants also agreed to repay Plaintiff for the $100,000 option investment in exchange for cancellation of said option.

25. Thereafter, Plaintiff was repaid a total of $100,000 on the option investment from July 2020 through April 2021.

26. Thereafter, Plaintiff was paid toward the commissions earned by his sale of the PruittHealth and the Majestic Care Home Health LLC facilities contracts a total of $135,000 from March 2020 through June 2021.

27. Payment to Plaintiff by the PBH Defendants of the $135,000 toward the commissions due during this time frame, confirms that in order to earn his commissions, nothing was required of Plaintiff other than that he sell and close the contracts, and that the continuing fulfillment of the obligations of those contracts was entirely and completely the responsibility of the PBH Defendants.

28. Contrary to the promises of the PBH Defendants, no 1099 tax form has ever been provided to Plaintiff for payment of the $135,000 toward the commissions due to Plaintiff.

29. Contrary to the promise of the PBH Defendants, Plaintiff was not paid commission checks in the amounts earned (i.e. $97,000 per month for 7 months, and $39,000 per month for 5 months).

30. Contrary to the promises of the PBH Defendants, Plaintiff was not paid commissions from any one individual or entity, but instead was paid from various and different wire accounts, and the payments to Plaintiff were often inclusive of amounts for repayment of Plaintiff's investment of $100,000 in another PBH business entity by which Plaintiff had been previously employed.

31. Upon information and belief, the method of the partial payments to Plaintiff on the commissions due to him were made in such a fashion in order to lead him on, to lull him into inaction in commencing steps to recover the amounts due to him, and to deceive and obfuscate the nature and identities of PBH Defendants by which he was employed and who owed him substantial amounts of earned but unpaid commissions. (Ex C - Order of July 15, 2021, issued by the US District Court for Maryland in the litigation between the PBH Defendants and the prior Silliman Defendants).

32. The total commissions earned by Plaintiff and due from the PBH Defendants was $874,000, but Plaintiff has been paid only $135,000, leaving a total of commissions due to Plaintiff in the amount of $739,000.

33. Despite demand, the PBH Defendants have failed and refused to pay Plaintiff the remaining commissions due for his sale of the foregoing nursing home contracts.

### Count I – Violation of South Carolina Payment of Wages Act
### (Against the PBH Defendants)

34. The allegations of Paragraphs 1-33 above are re-alleged as if fully set forth in this Count I.

35. During the relevant times, the PBH Defendants, individually, and/or in concert, and/or as a single business enterprise,  were Plaintiff's "Employer" under SC Code § 41-1-10(1).

36. Defendants' promise to pay Plaintiff a $1,000 commission per contract per month for the life of any and all contracts sold by Plaintiff for the PBH Defendants to provide medical testing services to facilities having need for medical testing including Covid 19 testing, constituted a promise to pay "wages" under an employment contract, as defined and set forth in SC Code § 41-1-10(2).

37. At no time when Plaintiff raised the issue of when he could expect to be compensated by payment of the remaining commissions due to him, did the PBH Defendants ever make any dispute or ever deny having made that promise to Plaintiff as his employment compensation, nor did Defendants ever provide the written notice of dispute required by SC Code § 41-10-60.

38. Because of Defendants' failure to pay Plaintiff the remaining total of commissions due to Plaintiff in the amount of $739,000, either during Plaintiff's employment or within 30 days after Plaintiff's separation from employment with Defendants, the Plaintiff is entitled to recover from the PBH Defendants treble damages in "an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney fees." SC Code § 41-10-80(C).

### Count II – Breach of Contract
### (Against the PBH Defendants)

39. The allegations of Paragraphs 1-38 above are re-alleged as if fully set forth in this Count II.

40. The PBH Defendants made a contract to employ Plaintiff as set forth above in exchange for payment to Plaintiff of commissions as set forth above, but failed to pay the commissions as promised, and thereby breached their contract with Plaintiff.

41. Plaintiff has suffered damages in the amount of $739,000 as a result of said breach.

### Count III – Breach of Contract Accompanied by Fraudulent Act
### (Against the PBH Defendants)

42. The allegations of Paragraphs 1-41 above are re-alleged as if fully set forth in this Count III.

43. As set forth above, the PBH Defendants breached their contract to employ Plaintiff as set forth above in exchange for payment to Plaintiff of commissions as set forth above by failing to pay the commissions as promised and by failing to provide Plaintiff with the required 1099 tax form.

44. The three elements for a claim for Breach of Contract Accompanied by a Fraudulent Act are (1) a breach of contract, (2) fraudulent intent relating to the breaching of the contract and not merely to its making, and (3) a fraudulent act accompanying the breach. *Connor v City of Forest Acres* 560 SE2d 606, 348 SC 454, 465-466 (2002). The fraudulent act is "*any act characterized by dishonesty in fact or unfair dealing.*" *Id.*[5]

45. As set forth above, the PBH Defendants acted dishonestly and unfairly and exhibited fraudulent intent relating to their breaching of the contract by never paying Plaintiff commission checks in the amounts earned (i.e. $97,000 per month for 7 months, and $39,000 per month for 5 months), by never paying Plaintiff commissions from any one individual or entity, but instead making partial payment to Plaintiff from various and different wire accounts, and often inclusive of amounts for repayment of Plaintiff's investment of $100,000 in another

---

[5] *Ball v Canadian American Express Company Inc.*, 442 SE2d 620 at 622-623, 314 SC 272 (1994) ("Breach of contract accompanied by a fraudulent act is *not simply a combination of a claim for breach of contract and a claim for fraud.* The action for breach of contract accompanied by a fraudulent act is *not based on the same elements as an action for fraud* (deceit). \*\*\* Breach of contract accompanied by a fraudulent act is *different*. It requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making. \*\*\* Such proof *may or may not involve false representations*. (the fraudulent act is any act characterized by dishonesty in fact, unfair dealing, or the unlawful appropriation of another's property by design). (emphasis supplied).

PBH business entity by which Plaintiff had been previously employed, and all at or about the same time as the PBH Defendants were engaging in their history of numerous, unexplained and factually unsupported large money transfers between various PBH entities noted by the Maryland District Court, all of which constitute fraudulent acts characterized by dishonesty and unfair dealing.

46. As set forth above, the PBH Defendant committed fraudulent acts accompanying their breach of contract by their method of the partial payments to Plaintiff on the commissions due to him in such a fashion in order to lead him on, to lull him into inaction in commencing steps to recover the amounts due to him, and to deceive and obfuscate the nature and identities of PBH Defendants by which he was employed and who owed him substantial amounts of earned but unpaid commissions, as well as by engaging in their history of numerous, unexplained and factually unsupported large money transfers between various PBH entities noted by the Maryland District Court.

47. The actions of the PBH Defendants in committing their breach of contract accompanied by their fraudulent acts were intentional and willful and designed to cause harm to Plaintiff.

**WHEREFORE**, having pled his Complaint against Defendants, Plaintiff Dorsey Hayden Smith requests trial by jury and entry of judgment against Defendants including:

a) Treble damages in the amount of $2,217,000 from the PBH Defendants pursuant to the South Carolina Payment of Wages Act. SC Code § 41-10-80(C);

b) Actual damages for breach of contract by the PBH Defendants in the amount of $739,000 unpaid commissions and compensation pursuant to the contract between Plaintiff and the PBH Defendants;

c) Actual damages for breach of contract accompanied by a fraudulent act in the amount of $739,000 unpaid commissions and compensation plus punitive and exemplary damages as set forth below;

d) Punitive and exemplary damages against Defendants in the amounts as determined by the jury having been apprised of the facts of the case;

14

e)  Attorney's fees and expenses of litigation;

f)  Pre-judgment and post-judgment interest;

g)  Such other and further relief as the Court deems just and proper.


Respectfully submitted:                    Query Sautter & Associates, LLC

                                           /s Michael H. Ellis

                                           _____

                                           Mike Ellis, Esquire
                                           mellis@qlawsc.com
                                           O. Grady Query, Esquire
                                           gquery@qlawsc.com
                                           147 Wappoo Creek Drive, Suite 202
                                           Charleston, South Carolina 29412
                                           Telephone     843.795.9500
                                           Facsimile     843.762.1500

                                           Attorneys for Plaintiff

Dated: 01/07/22
Charleston, South Carolina

15

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

DORSEY HAYDEN SMITH             )
      PLAINTIFF                 )
v                                 )
                               )
PATRICK BRITTON HARR,         )     Case No. 2:21-cv-03989-RMG
G. ELLSWORTH HARRIS V,       )     Jury Trial Demanded
COASTAL LABORATORIES INC,  )
AMS ONSITE INC,              )
Both Individually and as Liquidating Shareholders  )
     Of any lapsed above named entities   )
     DEFENDANTS.             )
                               )

Certificate of Service

Undersigned certifies that the foregoing has been filed with the Court's ECF system

resulting in electronic service upon counsel of record.


This __ day of January, 2022

                        Of Counsel

16